608 F.2d 123
 AMERICAN EASTERN DEVELOPMENT CORPORATION, a Florida
Corporation, et al., Plaintiffs-Appellees,
v.
EVERGLADES MARINA, INC., Defendant,
Switzerland General Insurance Company, a Foreign
Corporation, Defendant-Appellant.
 No. 76-2044.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 10, 1979.
 
 Gerald M. Walsh, Mark R. Boyd, Ft. Lauderdale, Fla., for Switzerland.
 Smathers & Thompson, Mercer K. Clarke, Miami, Fla., for plaintiffs-appellees.
 Appeals from the United States District Court for the Southern District of Florida.
 Before WISDOM, GODBOLD and CHARLES CLARK, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 The appellees owned pleasure boats, one described as a 24-foot yacht, the other as an 18-foot yacht, which were stored in dry storage racks inside a building owned and operated as a marina by Everglades Marina, Inc., located in Florida. The boats were fully operational and were in and out of the water almost weekly, launched and removed from the water by forklift. The purpose of the storage was to obviate storage in salt water with attendant costs of maintenance (including keeping the boats barnacle-free). The boats were damaged in a fire set by the president and sole stockholder of Everglades.
 
 
 2
 We agree with the district court that this case arose in admiralty and is not a land-based tort case. The boats were not withdrawn from navigation. This case is more analogous to those involving docking or wharfage than to those where boats are stored for the winter or laid up for long periods. In recent years, many pleasure boaters who frequently take their boats in and out of the water, as appellees here did, have come to regard dry storage at water-side marinas, from which the boats may be readily taken in and out, as an alternative to tying their boats up at docks or moorings. The boat is readily accessible to the water and can be quickly and easily launched or brought ashore to the storage shed, but it is not exposed to deteriorating effects of water and weather. Moreover, in determining whether a vessel has been withdrawn from navigation, one must look at its pattern of use. Pleasure boats are often tied up a higher proportion of the time than commercial vessels, which typically may spend little time in port. Here, the boats in question were used no less than necessary or appropriate for pleasure craft, and the dry storage, incident to regular use, was a substitute for wet mooring or docking. "Admiralty jurisdiction has, in the past, changed as 'new conditions give rise to new conceptions of maritime concerns.' " Alabama Dry Dock & Shipbuilding Co. v. Kininess, 554 F.2d 176, 179 (CA5), Cert. denied, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 190 (1977), Citing Detroit Trust Co. v. The Thomas Barlum, 293 U.S. 21, 52, 55 S.Ct. 31, 79 L.Ed. 176, 190 (1934).
 
 
 3
 Several courts have imposed maritime liens for docking, wharfage, or storage fees, particularly when some repairs were being performed upon the boats as well. See Yacht Charterers, Inc. v. Diesel Yacht Yankee Clipper, 121 F.2d 118 (D.Conn.1954) (wharfage); The Denelfred, 59 F.2d 213 (E.D.Mich.1932) (docking); The Artemis, 53 F.2d 672 (S.D.N.Y.1931) (winter storage); The Navis, 196 F. 843 (D.Me.1912) (storage). By contrast, in those older cases which did not impose such liens, the vessels were much more completely removed from navigation than the ones at issue here. See The Andrew J. Smith, 263 F. 1004, 1005 (E.D.N.Y.1920) (boat sunk); The C. Vanderbilt, 86 F. 785 (E.D.N.Y.1898) (boat blocked in by ice). We conclude, therefore, that the boats were not withdrawn from navigation and that the contracts for their dry storage were within admiralty jurisdiction.[1]
 
 
 4
 The district court properly held that it should apply Florida insurance law to construe the storage contract, relying upon Wilburn Boat Co. v. Fireman's Fund Insurance Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), and Irwin v. Eagle Star Insurance Co., 455 F.2d 827 (CA5), Cert. denied, 409 U.S. 852, 93 S.Ct. 118, 34 L.Ed.2d 95 (1972). The determinative issue in this appeal thus became the following question of Florida law:
 
 
 5
 Does the public policy as established by the laws of Florida prohibit third-party beneficiaries (appellees) of an insurance policy from recovery of benefits because the loss (issued by appellant Switzerland General) was intentionally caused by criminal acts of the insured when the insurance policy contains no express clause excluding such liability?
 
 
 6
 On January 10, 1979, we certified this question to the Supreme Court of Florida,[2] American Eastern Development Corp. v. Everglades Marina, Inc., 587 F.2d 810 (CA5, 1979). That court speedily and effectively answered the question in the negative by an opinion filed July 24, 1979, petition for rehearing denied September 28, 1979. Everglades Marina, Inc., et al. v. American Eastern Development Corp. et al., 374 So.2d 517 (Fla.1979). Once again both federal and state judicial systems are the beneficiaries of a procedure rooted in cooperative federalism. The answer of the Florida Supreme Court requires that the judgment of the district court against Switzerland General be affirmed.
 
 
 7
 The district court also awarded attorneys' fees against Switzerland General. Subsequently the Supreme Court of Florida decided Roberts v. Carter,350 So.2d 78 (Fla.1977), holding that the Florida statute providing for an award of attorneys' fees against an insurer, Fla.Stat.Ann. § 627.428(1) (1975), does not permit an award of fees when an injured "third party beneficiary" has brought the case. Appellees acknowledge that under the decision in Roberts they were not entitled to attorneys' fees. The award of fees must, therefore, be reversed.
 
 
 8
 AFFIRMED in part and REVERSED in part.
 
 
 
 [1]
 Even if the boats here were withdrawn from navigation each time lifted out of the water and into the storage shed, at least one court has recently implied that it would rest admiralty jurisdiction solely on the existence of a contract to store a boat. Fireman's Fund Amer. Ins. Co. v. Boston Harbor Marina, Inc., 285 F.Supp. 36 (D.Mass.1968), Rev'd on other grounds, 406 F.2d 917 (CA1, 1969) (jurisdiction actually based on repair provision). Moreover, even The C. Vanderbilt, 86 F. at 788, upon which appellant heavily relies, conceded that wharfage for ships removed from navigation is maritime in nature; that court held only that such wharfage did not give rise to a maritime lien, not that there was no admiralty jurisdiction
 
 
 [2]
 Pursuant to Fla.Stat.Ann. § 25.031 (1979) and Fla.Appellate Rule 9.510