LATIN AMERICAN PROPERTY AND CASUALTY INSURANCE COMPANY, Plaintiff,

v.

HI–LIFT MARINA, INC., Defendant.

CONTINENTAL INSURANCE COMPANY, Plaintiff,

v.

HI–LIFT MARINA, INC., Defendant.

Nos. 87–0082–Civ–Scott, 86–2456–Civ–Scott.

United States District Court, S.D. Florida, Miami Division.

Jan. 26, 1988.

William Cassidy, Miami, Fla., for plaintiff.

Bradley, Draper & McGraine, Miami, Fla., for defendant.

SCOTT, District Judge.

Pursuant to Federal Rule of Civil Procedure 52(a), the Court enters its findings and conclusions:

1. This is a consolidated subrogation action brought by Plaintiffs, Latin American Property and Casualty Insurance Company and Continental Insurance Company, to recover damages paid to their insureds, Myron Withka and Lance Raiffe, for property damage arising out of a fire which occurred on April 30, 1986 at the premises operated by Defendant, Hi–Lift Marina, Inc. The fire destroyed the boats owned by Withka and Raiffe, which were stored at the Defendant's marina pursuant to written storage agreements.

2. Plaintiffs have filed this action pursuant to the admiralty jurisdiction of this court. Fed.R.Civ.P. 9(h).

3. The Complaints are virtually identical and include three counts: breach of contract, breach of implied warranty, and negligence. Each count alleges that Defendant failed to use reasonable care in the storage of the subject vessel. Hi–Lift's Answer denied the material allegations of negligence, breach of contract, and breach of implied warranty.

4. The following facts have been stipulated to by the parties:

A. At all times material to this dispute, Defendant, Hi–Lift Marine, Inc., operated a marina located in North Miami Beach, and provided facilities for indoor storage of pleasure boats.

B. Plaintiff Latin American insured a boat owned by Myron Withka; and, Plaintiff Continental Insurance Company insured a boat owned by Lance Raiffe.

C. Myron Withka and Lance Raiffe purchased boats from Hi–Lift Marina in January and February of 1986 respectively, and placed the vessels in storage at Defendant's marina.

D. In the early morning hours of April 30, 1986, the facility operated by Hi–Lift Marina, Inc. was completely destroyed by fire.

E. The cause of the fire is unknown, although it is believed that the fire originally broke out in the northeast corner of the east storage barn.

F. Myron Withka's boat was stored in the northeast area of the storage facility; and Lance Raiffe's boat was stored in the northwest area of the storage facility.

G. After the fire loss, Latin American Property and Casualty Insurance Company paid Myron Withka Twenty five thousand, six hundred forty-one and 03/100 Dollars ($25,641.03), representing 50% of the value of the vessel; and, Continental paid Lance Raiffe Thirty two thousand dollars ($32,000), representing the total value of the vessel.

H. Although the cause of the fire is unknown, the Department of Alcohol, Tobacco and Firearms ruled out arson and structural electrical causes.

I. The building which housed the marina was originally built in 1967 by Atlas Marine.

J. Atlas Marine constructed an addition in 1968.

K. Hi–Lift Marina, Inc. came into control of the marina in 1975.

L. Hi–Lift Marina did not alter the existing structure between 1975 and the time of the fire.

M. Latin American's damages are $25,641.03.

N. Continental's damages are $32,000.00.

5. The sole issues are whether Hi–Lift Marina, Inc. was reasonable in the care and custody of the boats; and, if so, was that negligence a legal cause of damages to one or both of the boats? In support of this contention, Plaintiffs argue that Hi–Lift, owner of the premises, violated the applicable South Florida Building Code and additionally failed to use reasonable care by not having adequate security and failing to install a sprinkler system and $CO_2$ system. Defendant denies these allegations and steadfastly maintains that it met all applicable requirements. Furthermore, Defendant contends that even if it was negligent, the Plaintiffs cannot prove causation. Specifically, Defendant argues that Plaintiffs cannot demonstrate that any of the omissions claimed would have prevented the loss of the boats. The Defendant points to the stipulation that the "fire was of unknown origin."

6. Plaintiffs presented two witnesses in their case-in-chief, Robert Ellis and Robert Crain. Ellis is the owner-operator of Hi–Lift. Called as an adverse witness, Ellis testified that (1) there were no alarm systems; (2) there were no sprinkler systems or $CO_2$ systems; (3) a guard was on the Hi–Lift premises until midnight, but, after that time, the Defendant employed only an outside guard service; and (4) there were six smoke detectors on the East side of the premises but none on the West side.

Of importance is the fact that the Hi–Lift premises were divided by fire doors between the East Barn and West Barn. These doors were kept open, but did contain an automatic closing mechanism activated in the event of fire. Whether the doors were fire doors within the meaning of the code and properly operable were hotly contested questions.

Plaintiffs also called Robert L. Crain as an expert witness. Crain testified that the Hi–Lift premises violated the Code. In summary, Crain opined that the premises should have had a sprinkler system or proper fire door dividing the East–West areas. He testified that the doors did not meet the Code because the openings were too big. He offered no opinion on the issue of causation.

7. At this point, Plaintiffs rested. Plaintiffs also contemporaneously announced that they were abandoning their breach of warranty and breach of contract counts. The case would proceed solely as an issue of negligence.

8. In its case-in-chief, Defendant initially called a series of fact witnesses. Its first witnesses were Robert Ellis and Martin Platzer. Each of these witnesses outlined the safety procedures of Hi–Lift. The purpose of this testimony was to demonstrate the reasonableness of care of the Defendant under the circumstances, e.g., constant inspection of boats and eviction of poorly maintained boats. Next, Defendant called various police and fire personnel. The import of this testimony was to show the large dimension of the fire which engulfed the building. Chief Paulson testified that the flames of the fire could be seen from the fire station and that, due to the intensity, fire personnel made no effort to save the building; instead they assumed a defensive posture in order to control the fire and prevent it from reaching adjoining property. Captain McAllister, a fire investigator for Metro Dade Fire Department, testified that the fire originated in the northeast quadrant of the building. He could not determine the cause of the fire. Finally, Defendants displayed Exhibits 27 and 29. Exhibit 27 was the combined news footage of the fire; exhibit 29 was the tape of the High–Lift premises which was filmed on the day after the fire. The obvious purpose was to demonstrate the magnitude of the fire and raise an inference that it had spread quickly.

9. The Defendant next called two experts. The first was Arnard Gustaferro. He is a structural engineer, with expertise in fire resistance. He opined that the dividing walls at Hi–Lift were four-hour fire

walls. Gustaferro testified that based upon his "reading of the fire" at Hi–Lift, it developed very rapidly. He stated that the fire could have smoldered for sometime but once the flash-over occurred, it spread rapidly reaching 1500 to 2000°F within a few moments. Gustaferro further opined that the trusses would collapse at 900°F; thereafter, the roof would fall.

In short, the import of Gustaferro's testimony was that the fire developed with such intensity that the roof collapsed within moments causing the trusses to fall and block the fire door from closing. This scenario would explain why the fire doors didn't activate and prevent the fire from spreading to the West barn.

The second expert was Raymond P. Arms. He is an expert in fire science. Arms opined that Hi–Lift's premises conformed with the applicable provisions of the South Florida Building Code. Arms testified that the doors were not too wide and met code provisions. He denied the need for a sprinkler system and further stated that the fire walls were sufficient. Lastly, Arms believed that even if a sprinkler system was in existence, it would not have prevented the fire. This opinion was predicated on the theory that the explosion of the gas tanks in the individual boats stored at the Hi–Lift premises caused the rapid spread of the fire and thus would have abrogated the effort of any sprinkler system. He pointed to the testimony of the watchman to corroborate his opinion. With this review of the trial evidence, we turn to our findings and conclusions.

10. This Court has jurisdiction over the parties in the controversy pursuant to its Admiralty and Maritime jurisdiction provided for by Rule 9(h) of the Federal Rules of Civil Procedure.

■11. The storage of boats is a bailment for mutual benefit of the parties. Thus, the contracts for storage entered into between the Plaintiffs' insureds and Defendant are bailment agreements. *Snyder v. Four Winds Sailboat Centre, Ltd.,* 701 F.2d 251 (2d Cir.1982); *Stegemann v. Miami Beach Boat Slips,* 213 F.2d 561 (5th Cir.1954).

■ 12. A prima facie case is ordinarily made out for the bailor when he proves a delivery of the property to the bailee in good condition and the failure to return, or return in a damaged condition by the bailee, the burden then shifting to the bailee to go forward with evidence in rebuttal. *Stegemann, supra; Employers Fire Insurance Co. v. Laney & Duke Storage Warehouse Co., Inc.,* 392 F.2d 138 (5th Cir.1968).

■ 13. Plaintiffs have proven their prima facie case by showing that Plaintiffs' insureds delivered the subject vessels in good condition to the Defendant for storage, and that the vessels were subsequently destroyed in the fire. Additionally, the Plaintiffs have presented evidence of the Defendant's failure to have an automatic sprinkler system in the storage facility and adequate security to watch for potential hazards. The Defendant counters that its efforts were adequate and, for example, points to its compliance with all requests of the Fire Department. We disagree and easily conclude that Hi–Lift was negligent in its care and custody of the boats including the two in question. Hi–Lift's failure to obtain adequate security by either installing an alarm system or having on-premises security after midnight demonstrates omissions establishing negligence. In concluding that Hi–Lift breached its duty under bailment principles, we need not determine the issue of whether Defendant's premises violated the South Florida Building Code. The blatant omissions by Hi–Lift justify a finding of negligence— whether or not the code was violated. With this statement, we pass to the thornier issue of legal cause.

■ 14. At the outset, we note that Plaintiffs failed to offer any expert testimony on causation. Conversely, the Defendant offered two experts, one of which, Arnard Gustaferro, was most convincing in his presentation. We need not repeat his testimony in depth here, as it was adequately described above, but suffice it to say, his theory is supported by corroborative evidence including physical facts and

uncontroverted testimony of key witnesses. We accept his theory and therefore conclude that Hi–Lift proved that no breach on its part caused or substantially contributed to the loss of the boats. The fire, unknown as to origin, but demonstrating immense heat and rapid development was of such a nature that no safety mechanism could have prevented the loss.

We feel this conclusion is wholly supported by the evidence and is the correct result under these facts. Nevertheless, we remain troubled, and echo Plaintiffs' outcry that it is easy to contend that "nothing would have worked," especially, as here, when very little was done. Notwithstanding the natural appeal of this logic, we remain convinced that this controversy presents a scenario of loss that could not have been prevented; accordingly, we find for the Defendant Hi–Lift. However, lest Hi–Lift or other marinas in this area or their carriers interpret this decision as an invitation to a free ride, we publish this opinion as a notice that businesses, such as Hi–Lift, charged with the responsibility of care and custody of millions of dollars in marine inventory, should install appropriate and reasonable fire preventative mechanisms including, but not limited to sprinklers and other alarm systems. Any future failure to do so may be a basis for punitive damages in light of this opinion.

Accordingly, it is

ORDERED and ADJUDGED that judgment is entered in favor of the Defendant Hi–Lift and against the Plaintiffs. These cases are dismissed with prejudice. Jurisdiction is retained for the purpose of taxation of costs upon appropriate motion.