**LEWIS CHARTERS, INC.,**
**Plaintiff–Appellant,**

v.

**HUCKINS YACHT CORPORATION,**
**Ocean Entertainment, Inc.,**
**Defendants–Appellees.**

No. 88–3531.

United States Court of Appeals,
Eleventh Circuit.

May 1, 1989.

---

Richard R. McCormack, Miami, Fla., for Lewis Charters, Inc.

Robert E. Warren, Taylor, Moseley & Joyner, Jacksonville, Fla., for Huckins Yacht Corp.

Herbert R. Kanning, Kanning & Regier, P.A., Jacksonville, Fla., for Ocean Entertainment, Inc.

Before RONEY, Chief Judge, HILL, Circuit Judge, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal by Lewis Charters, Inc. from an order of the district court dismissing its complaint for exoneration from or limitation of liability for damages resulting from a fire occurring in the boat yard owned by appellee, Huckins Yacht Corporation. The district court found that it had no admiralty jurisdiction over plaintiff's petition. For the reasons set forth below, we affirm.

## I. STATEMENT OF THE CASE

The fire that prompted this litigation occurred on February 27, 1986, at the paint facility of a marina owned by Huckins Yacht. A boat owned by Lewis Charters, the Serenity, was stored in the wet berth of the paint facility, awaiting repair by Huckins Yacht. Another vessel, owned by Ocean Entertainment, Inc., was stored in the paint room on the same premises. A fire began, destroying both yachts and the paint facility. The cause of the fire had not yet been determined at the time this appeal was filed.

Huckins Yacht initiated an action against Lewis Charters in the federal district court (No. 86–193), based on diversity of citizenship, alleging that the fire started on Lewis Charters' boat due to the negligence of Lewis Charters' agents. Lewis Charters

counterclaimed, alleging negligence by Huckins Yacht and breach of a bailment agreement. Ocean Entertainment and several insurance companies intervened to assert claims against one or both of the parties to the action.

On August 22, 1986, Lewis Charters filed a complaint (No. 86–890) for exoneration from or limitation of liability, pursuant to the Limitation of Vessel Owner's Liability Act, 46 U.S.C.App. § 181 *et seq.*, for the claims against it in the action already pending. The parties stipulated to consolidate the two cases, with No. 86–193 to be tried by a jury and No. 86–890 to be subject to the court's admiralty jurisdiction, to resolve any questions remaining after No. 86–193 was concluded. The district court entered an order consolidating the two cases solely for joint hearings and trial. The parties filed a consent to proceed before a magistrate.

Just before trial, Huckins Yacht moved to dismiss Lewis Charters' complaint for exoneration from or limitation of liability, on the ground of a lack of admiralty jurisdiction. Pursuant to an order dated June 2, 1988, the U.S. magistrate granted the motion and dismissed case No. 86–890, which is the only subject of this appeal.

## II. APPELLATE JURISDICTION

As a preliminary matter, we must determine whether this Court has jurisdiction to entertain the appeal of case No. 86–890. The notice of appeal was filed on June 24, 1988, before the initial and related action, No. 86–193, was tried. Because the two cases had been consolidated and judgment was entered in only one of them, this Court questioned, before oral argument, whether the order dismissing case No. 86–890 was a final decision within the meaning of 28 U.S.C. § 1291. If not, the appeal from that judgment would be premature, and this Court would lack appellate jurisdiction.[1]

In the proceedings below, the parties signed a stipulation to consolidate the two cases. The district court then ordered, in part, that:

(i) all matters in the two actions shall be tried jointly;

(ii) the actions were not consolidated for any purpose other than joint hearings and trial;

(iii) each action shall be pleaded separately; and

(iv) pleadings may be jointly styled but a pleading so styled should be filed in each action.

Order of June 30, 1987, Record Tab 15.

■ When multiple claims or parties are involved in an action, and final judgment has been entered as to fewer than all of the claims or parties, the district court must provide "an express determination that there is no just reason for delay and . . . an express direction for the entry of judgment," before an appeal may be taken from that judgment. Fed.R.Civ.P. 54(b). In *Ringwald v. Harris,* 675 F.2d 768 (5th Cir. 1982), the plaintiff had sued on a promissory note then filed a separate suit to set aside certain conveyances allegedly made by the defendant to hinder, delay and defraud the defendant's creditors, particularly the plaintiff. The two cases were "consolidated for all purposes, including trial." *Id.* at 769. Upon plaintiff's motions, the court entered summary judgment in favor of plaintiff in one suit and partial summary judgment in favor of plaintiff in the other, in a single document entitled "Judgment." No certification was issued by the district court, and the appeal was dismissed without prejudice.

The Court of Appeals espoused the view, expressed in several of the cases it cited, that whether the decision in question was governed by Rule 54(b), so that the district court was required to issue a certification and direct the entry of judgment as a predicate for appeal from the order, depended upon the extent and purposes of the consolidation. *Id.* at 770; *see, e.g., Jones v. Den Norske Amerikalinje A/S,* 451 F.2d 985, 986–87 (3d Cir.1971) (where order of consol-

---

1. Even if the district court's order could be considered an interlocutory decree in an admiralty case under 28 U.S.C. § 1292(a)(3), which would be appealable, the notice of appeal was not filed within the 15 days required by 28 U.S.C. § 2107.

idation was not for all purposes but only for trial, judgment "probably is final and hence appealable under 28 U.S.C. § 1291"). The court in *Ringwald* held that since the causes of action could have been brought as a single suit and the consolidation was "clearly for all purposes," compliance with Rule 54(b) was required before an appeal could be taken from the order, which did not dispose of all claims against all parties. *Accord Bank South Leasing, Inc. v. Williams,* 769 F.2d 1497, 1500 n. 1 (11th Cir.), *vacated on other grounds,* 778 F.2d 704 (11th Cir.1985).

■ Here, the district court did not make a determination pursuant to Rule 54(b). However, the district court made clear that the consolidation of the two cases was not for all purposes. The suits were consolidated for limited purposes only, and each retained its separate identity. The parties stipulated that the first action would be tried by a jury; the district court would then decide the exoneration/limitation issue. The two actions were thus essentially severed and did not merge into a single cause. *See, e.g., Gulf Coast Fans v. Midwest Electronics Importers, Inc.,* 740 F.2d 1499, 1506–07 (11th Cir.1984) (appellant was not obligated to wait until all proceedings in both of the cases consolidated were completed because the cases were severed). As such, no certification under Rule 54(b) was necessary.

The lower court expressly ordered that case No. 86–890 was dismissed for lack of subject matter jurisdiction. The court explicitly terminated the action for limitation or exoneration, ending that litigation. *See Schuurman v. The Motor Vessel "Betty KV,"* 798 F.2d 442 (11th Cir.1986). The decision of the district court dismissing appellant's action is thus final and appealable, subject to this Court's appellate jurisdiction under 28 U.S.C. § 1291.

## III. ADMIRALTY JURISDICTION

### A. *Background*

Federal admiralty jurisdiction finds it source in Article III, Section 2 of the United States Constitution, which extends the judicial power "to all Cases of admiralty and maritime Jurisdiction." Congress implemented this jurisdictional grant in what is now 28 U.S.C. § 1333(1).[2] In tort cases, federal admiralty jurisdiction was traditionally invoked if the tort was "maritime," *i.e.,* if the wrong occurred on navigable waters. Determination of whether a tort was maritime thus depended upon the locality of the wrong. *The Plymouth,* 70 U.S. (3 Wall.) 20, 36, 18 L.Ed. 125 (1866). The locality test was long applied as the sole criterion for admiralty tort jurisdiction. In fact,

> [t]he strict locality standard was perfunctorily repeated with such frequency that most courts seemingly lost track of the failure of the Supreme Court to explicitly decide whether maritime tort jurisdiction turned solely on maritime locality.

*Kelly v. Smith,* 485 F.2d 520, 523 (5th Cir.1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974).

With time, however, and the advent of new technologies, it became apparent that a "purely mechanical application of the locality test" alone did not suffice as a predicate for admiralty jurisdiction. *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 258–61, 93 S.Ct. 493, 499–501, 34 L.Ed.2d 454 (1972). The federal courts created exceptions to the strict locality rule, to avoid unjust results in situations where the tort had no maritime locality but did bear a relationship to maritime service, navigation or commerce. *Id.* at 259, 93 S.Ct. at 500. *See, e.g., O'Donnell v. Great Lakes Dredge & Dock Co.,* 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943) (Jones Act applied to injuries to a seaman on land because of his connection with maritime commerce); *Gutierrez v. Waterman S.S. Corp.,* 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963) (doctrine of unseaworthiness extended to seaman's injuries sustained on land, when caused by defects in the ship or its gear).

---

**2.** This section provides:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction....

28 U.S.C. § 1333(1).

Congress also removed an inconsistency of the strict locality test by expanding the rule so that admiralty jurisdiction would lie in claims for damage caused by a vessel on navigable water, even if the damage or injury was "done or consummated on land." Extension of Admiralty Jurisdiction Act, 46 U.S.C.App. § 740 (1948).

In 1972, the Supreme Court considered one of the difficulties involved in strictly applying the locality test, in *Executive Jet, supra*. The case involved a jet aircraft that struck a flock of seagulls as it was taking off from a Cleveland airport. The birds were drawn into the airplane's jet engines, causing the plane to lose power and crash, eventually sinking in the navigable waters of Lake Erie. The aircraft's owners sued for damages, invoking federal admiralty jurisdiction, and alleged that the airport negligently failed to keep the runway free of birds or to give adequate warning of their presence. *Id.* 409 U.S. at 250–51, 93 S.Ct. at 495–96. The Supreme Court recognized the fortuitous nature of the "locality" in which the wrong occurred in cases involving aircraft, which, "[u]nlike waterborne vessels, ... are not restrained by one-dimensional geographic and physical boundaries." *Id.* at 268, 93 S.Ct. at 504. The Court held that, in an aviation context, invocation of admiralty jurisdiction requires a showing in addition to the locality rule: "that the wrong bear a significant relationship to traditional maritime activity." *Id.*

As to what constitutes that "significant relationship," the Court listed as a traditional concern of admiralty law the rules governing the movement of vessels upon the waters, matters which have no bearing on the operation of aircraft. *Id.* at 270, 93 S.Ct. at 505. The Court also noted the constraints of federalism imposed upon federal courts, so as not to deprive the states of their rightful jurisdiction over tort controversies to which state law should apply. *Id.* at 272–73, 93 S.Ct. at 506–07. The Court concluded that no relationship existed between the land-based airplane's fortuitous fall into navigable waters, as it attempted to fly from one part of the continental United States to another, and "tradi-

tional maritime activity involving navigation and commerce on navigable waters." *Id.* at 272, 93 S.Ct. at 506. State tort law more appropriately applied, the Court held. *Id.* at 273, 93 S.Ct. at 506–07.

The rationale in imposing this new "nexus" requirement was soon extended beyond aviation torts. The Fifth Circuit reaffirmed its view that the nexus requirement applied in tort cases outside the aviation context. *Kelly v. Smith, supra*. The Supreme Court approved that construction in *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). In *Foremost*, the Court held that a collision between two pleasure boats, which involved "the negligent operation of a vessel on navigable waters," had a "sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction." *Id.* at 674, 102 S.Ct. at 2658. The Court rejected the argument that a substantial relationship with *commercial* maritime activity was required. Restricting admiralty jurisdiction to those actually engaged in commercial maritime activity would not adequately protect the strong federal interest in maritime commerce, since noncommercial maritime activity, also, has a potential effect on maritime commerce. *Id.* at 674–75, 102 S.Ct. at 2658. The Court noted that "[n]ot every accident in navigable waters that might disrupt maritime commerce will support federal admiralty jurisdiction." *Id.* at 675 n. 5, 102 S.Ct. at 2658 n. 5. Even though a tortious act might disrupt navigation of commercial vessels (as the sunken airplane in *Executive Jet* might have done, for example), "this kind of potential hazard to maritime commerce [must arise] out of activity that bears a substantial relationship to traditional maritime activity." *Id.*

The current inquiry for admiralty tort jurisdiction thus includes the "navigable waters" locality test, supplemented by the nexus test. *Harville v. Johns–Manville Products Corp.*, 731 F.2d 775, 781 (11th Cir.1984). In the instant case, we turn first to an analysis of this more recent addition to the federal admiralty jurisdiction standard.

## B. *The Nexus Test*

■ To determine whether the alleged wrong bears a significant relationship to traditional maritime activity, this Court has considered four relevant factors, first set out by the former Fifth Circuit in *Kelly v. Smith, supra:* (i) the functions and roles of the parties; (ii) the types of vehicles and instrumentalities involved; (iii) the causation and type of injury; and (iv) traditional concepts of the role of admiralty law. *Kelly,* 485 F.2d at 525.[3]

In *Kelly,* the defendants were hunters from a private game preserve who fired rifle shots from ashore at deer poachers fleeing in a motorboat on a river, a major commercial artery. The Court concluded that the rifle fire, which injured the pilot aboard the boat, presented a sufficient danger to maritime commerce to invoke the Court's admiralty jurisdiction and to furnish remedies to those injured. 485 F.2d at 526. The Court placed special emphasis on the fourth factor—traditional concepts of the role of admiralty law—in its analysis.

■ The party most seriously injured in *Kelly* was the pilot of the boat, whose task was to navigate the river. In the case before us, there were no personal injuries resulting from the fire. The fire occurred in the early evening, when no one was occupying either boat. Appellee's employees had finished working at the paint facility for the day, thus none was injured. The parties involved are boatowners and the owner of the marina, but they were not functioning in particularly maritime roles when the fire took place.

The vehicles and instrumentalities involved in the fire at Huckins Yacht were boats, Huckins Yacht's marina, and the materials that ignited the fire. The boats were obviously maritime vessels.[4] The paint facility that was damaged related to maritime activity, because it serviced maritime vessels. However, the vessels involved were not engaged in navigation or near other vessels navigating the waters, unlike the boat in *Kelly.* Even if the vessels involved were pleasure boats, admiralty jurisdiction may be invoked, if they are engaged in navigation. *Cf. Foremost,* 457 U.S. at 674–75, 102 S.Ct. at 2658.

The cause of the fire was unknown at the time appellant filed its notice of appeal. At oral argument, it was revealed that case No. 86–193 was tried, determining that the fire started on the vessel owned by appellant and was the result of arson. Whatever the cause, the boats were both at rest when the fire occurred, and no one was present on them. The damage that resulted from the fire, although affecting objects and facilities related to the water, did not occur where other vessels in navigation could have been affected. Ocean Entertainment's boat was in the spraypaint room of Huckins Yacht's paint building, and appellant's yacht was inside the paint building, in a slip that happened to be on water.

We give special consideration to the final factor, the traditional concepts of the role of admiralty law, in deciding whether to permit invocation of admiralty jurisdiction over appellant's claim. *Harville v. Johns-Manville,* 731 F.2d at 785.

> Our precedent indicates that '[a]dmiralty jurisdiction in the federal courts was predicated upon the need for a uniform development of the law governing the maritime industries.' Disputes not involving these interests are not within the admiralty jurisdiction of the federal courts.

731 F.2d at 786 (quoting *Peytavin v. Government Employees Insurance Co.,* 453 F.2d 1121, 1127 (5th Cir.1972)). The

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this Court adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

**4.** The boat owned by Ocean Entertainment was apparently a pleasure yacht. Appellant contends that, contrary to the district court's finding, its vessel was not necessarily a pleasure boat, but had some commercial function. Since "there is no requirement that 'the maritime activity be an exclusively commercial one,'" *Foremost,* 457 U.S. at 674, 102 S.Ct. at 2658 (citation omitted), the characterization of appellant's boat as either pleasure or commercial does not alter the result we reach in our analysis.

national interest also includes providing "remedies for those facing the hazards of waterborne transportation." *Kelly*, 485 F.2d at 526.

We fail to see how resolution of this case according to admiralty law will have any potential impact on maritime commerce. The boats were not in proximity to other vessels either in or serving the flow of commerce. There is no discernable relationship between the tort committed here and "traditional maritime activities, involving navigation or commerce on navigable waters." *Executive Jet*, 409 U.S. at 256, 93 S.Ct. at 498; *Foremost*, 457 U.S. at 674–77, 102 S.Ct. at 2658–59. Moreover, there is no important national interest which militates in favor of admiralty jurisdiction in this case. *Cf. Moser v. Texas Trailer Corp.*, 623 F.2d 1006, 1009 (5th Cir.1980) (national interest in a uniform rule governing duties to remedy dangerous working conditions for loading cargo in navigable waters). Appellant's situation is similar to that of a car owner's, who takes his or her car to the mechanic for repairs and returns to find that a fire, which started either in the car or in the shop, destroyed the car, another car, and part of the garage. We see no reason to treat appellant's claim to limit its liability for the damage caused here differently than we would the same claim by a car-owner. Absent the requisite relationship to traditional maritime activity, appellant's claim does not fall within the federal court's maritime jurisdiction.[5]

## IV. LIMITATION OF LIABILITY ACT

■ Appellant contends that the Limitation of Liability Act, 46 U.S.C.App. § 181 *et seq.*, provides an independent basis of admiralty jurisdiction and that its claim may thus be heard, even if not otherwise cognizable in admiralty.[6]

Appellant argues that, even if its petition is not related to traditional maritime activity, the Limitation Act may be asserted by the owner of a vessel to limit its liability against both maritime and non-maritime tort claims. Appellant relies upon *Richardson v. Harmon*, 222 U.S. 96, 32 S.Ct. 27, 56 L.Ed. 110 (1911), in which the Court permitted the owners of a commercial steam barge which collided with the abutment of a railway draw bridge to limit their liability for damage to the bridge. Although damage to a bridge was considered a non-maritime tort, the Court extended the limitation provisions to apply to such cases; thus, the liabilities of a shipowner in respect of all claims arising out of the conduct of the master and crew would not exceed the owner's interest in the ship. Shipowners remained liable for damage or injury caused by their own fault, neglect or contracts. *Id.* at 106, 32 S.Ct. at 30.

*Richardson* was decided before the Supreme Court explicitly included a nexus requirement in the test for admiralty jurisdiction under Section 1333. With a new standard in place, we must now decide whether a claim that does not bear a significant relation to traditional maritime activity and is thus incapable of invoking admiralty jurisdiction under section 1333 is, nonetheless, cognizable in the federal court under the Limitation of Liability Act.

The Court of Appeals for the Seventh Circuit recently addressed this issue in a case involving a fire aboard a non-commercial vessel docked at a recreational marina, destroying that boat and damaging several other boats and the marina. *In the Matter of Sisson*, 867 F.2d 341 (7th Cir.1989). The owner of the boat claiming limitation or exoneration argued, as does Lewis Charters, that the right of limitation under the

---

**5.** Because appellant has not satisfied the nexus requirement, we need not determine whether the tort occurred on navigable waters.

**6.** Section 183 of the Limitation Act provides: (a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss,

damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided by subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending. 46 U.S.C.App. § 183(a).

Limitation Act does not depend upon the maritime nature of the liability, thus jurisdiction under the Limitation Act is not as constricted as is admiralty jurisdiction in tort.

In *Sisson*, the court questioned the applicability of *Richardson v. Harmon*. There, the Supreme Court extended the availability of limitation of liability to damage occurring on land, with the aim of furthering the purpose of the Limitation Act—to improve the competitive posture of the American shipping industry. Congress enacted the Limitation Act to encourage investment in the shipping industry in the United States and prevent investment capital from being diverted to England. Therefore, it limited a shipowner's liability for losses, caused by the operation of the vessel without the owner's privity or knowledge, to the salvage value of the vessel. *Univ. of Texas Medical Branch at Galveston v. United States*, 557 F.2d 438, 441 (5th Cir.1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978).

Because of the Congressional aim to lessen or remove certain economic burdens on American shipowners, the Act was liberally construed, as seen in *Richardson v. Harmon*, 222 U.S. at 101, 104, 32 S.Ct. at 28, 29–30. The Limitation Act has more recently been described, however, as "hopelessly anachronistic" and long ago "due for a general overhaul." 557 F.2d at 441 (citing G. Gilmore & C. Black, *The Law of Admiralty* 677 (1st ed. 1957)). The reasons for the Supreme Court's liberal construction in 1911 no longer exist today. *See Maryland Casualty Co. v. Cushing*, 347 U.S. 409, 437, 74 S.Ct. 608, 623, 98 L.Ed. 806 (1954) (Black, J., dissenting) ("Judicial expansion of the Limited Liability Act at this date seems especially inappropriate. Many of the conditions in the shipping industry which induced the 1851 Congress to pass the Act no longer prevail.").

This reasoning led the *Sisson* court to hold that the principles of *Executive Jet* and *Foremost* apply to the Limitation Act as well. Likewise, we think the Limitation Act must be subject to the constraints enunciated in *Executive Jet, Foremost,* and the cases of this Court by which we are bound. *See Crotwell v. Hockman–Lewis, Ltd.,* 734 F.2d 767 (11th Cir.1984).[7]

Appellant relies upon *American Eastern Development Corp. v. Everglades Marina, Inc.,* 608 F.2d 123 (5th Cir.1979), which is not dispositive here. The Court held in that case that the lower court could exercise admiralty jurisdiction over claims involving pleasure boats stored in dry storage racks inside a building owned and operated as a marina. The boats and part of the marina were destroyed by a fire set by the marina's owner. The boats had been put in storage only to avoid the damage and costs associated with salt-water storage. Because the boats were in and out of the water weekly, they were not "withdrawn from navigation," *id.* at 124. The Court found the status of the boats analogous to that of vessels docked at a marina, rather than stored for longer periods of time, where they are less accessible.

In *American Eastern*, the marina itself was a waterside marina. The boats were readily accessible and used the dry storage as a substitute for wet mooring or docking. *Id.* at 125. Lewis Charters' boat was not on Huckins Yacht's premises "incident to regular use," as in *American Eastern, id.* The boat was inside the paint facility, work on the boat was in progress and the yacht was certainly withdrawn from navigation.

In addition, *American Eastern*, although decided after *Executive Jet* and *Kelly v. Smith,* preceded the *Foremost* decision, in

---

7. The Court of Appeals for the former Fifth Circuit reached a similar conclusion with respect to the Admiralty Extention Act, 46 U.S.C. App. § 740. In *Sohyde Drilling & Marine Co. v. Coastal States Gas Producing Co.,* 644 F.2d 1132 (5th Cir.), *cert. denied,* 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981), the question was whether the Admiralty Extension Act provided an independent source of admiralty jurisdiction. The Court concluded that the principles of *Executive Jet* applied to that Act. *Id.* at 1135. The legislative history of the Act revealed that it was designed to correct the inconsistencies and inequities of the old strict locality test. The Act was intended not to create new causes of action but merely to expand the locality rule of admiralty jurisdiction to encompass harm done or consummated on land. *Id.* at 1136.

**1054**

which the nexus test was unequivocally applied in the context of maritime torts. Moreover, since *Foremost*, this Court has consistently applied the four-part *Kelly* test and the principles of *Foremost* to cases invoking admiralty jurisdiction; *see, e.g., Crotwell v. Hockman–Lewis Ltd., supra; Harville v. Johns–Manville Products, supra.*[8]

Appellant's reliance upon *Gibboney v. Wright,* 517 F.2d 1054 (5th Cir.1975), is also misplaced. There, the owner of a sailing vessel was granted a limitation of liability for damages incurred when he lent the boat to a crew member and his family. The boaters had motored to purchase fuel and, while in the process of casting off from the dock, a flash fire occurred, caused by the fuel tank, negligently left unsecured while being installed during the boat's construction. The question of admiralty jurisdiction was never discussed in the Court's opinion. The principal issue was whether to apply the "somewhat drastic—for the injured claimants—provisions of the Limitation Act" to private owners of pleasure craft. *Id.* at 1057. The Court held that the Limitation Act applied. We do not disagree with *Gibboney* in that owners of pleasure vessels may limit their liability under the Limitation Act, while we recognize, as did the *Gibboney* court, that there is little reason for such a rule. *Id.* That issue need not be addressed now, however, because the facts of the case before us are entirely dissimilar to those in *Gibboney.* There, the sailboat was actually leaving the dock, about to enter the waters travelled by other vessels, when the fire occurred. The yachts at Huckins' marina were in no such position.

In light of the evolution of the Limitation Act and of the principles of admiralty jurisdiction, we conclude that appellant may not base admiralty jurisdiction solely upon the Limitation Act, in the absence of a significant relationship between its claim and tra-

ditional notions of maritime activity. Finding no such relationship, the order of the district court is, accordingly, AFFIRMED.

---

**8.** Even when the strict locality test applied to general admiralty jurisdiction, some courts required it to be satisfied before a Limitation Act claim could be brought. *See, e.g., In re Stephens,* 341 F.Supp. 1404 (N.D.Ga.1965) (dismissing claim for limitation for want of admiralty

jurisdiction, where wrong occurred on a lake that was not navigable); *George v. Beavark, Inc.,* 402 F.2d 977 (8th Cir.1968) (affirming district court's refusal to apply Limitation Act due to lack of admiralty jurisdiction, where tort did not occur on navigable water).