887 F.2d 1477
 1990 A.M.C. 2004
 LATIN AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY,
Plaintiff-Appellant,
v.
HI-LIFT MARINA, INC., Defendant-Appellee.
CONTINENTAL INSURANCE COMPANY, Plaintiff-Appellant,
v.
HI-LIFT MARINA, INC., Defendant-Appellee.
CONTINENTAL INSURANCE COMPANY, Plaintiff-Appellee,
v.
HI-LIFT MARINA, INC., Defendant-Appellant.
LATIN AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY,
Plaintiff-Appellee,
v.
HI-LIFT MARINA, INC., Defendant-Appellant.
 Nos. 88-5247, 88-5287.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 13, 1989.
 
 April M. Zwick, Miami, Fla., for Latin American Property & Cas. Ins. co.
 Gail L. Kniskern, Betsy E. Gallagher, Miami, Fla., for Hi-Lift Marina, Inc.
 Appeals from the United States District Court for the Southern District of Florida.
 Before VANCE, Circuit Judge, RONEY*, Senior Circuit Judge, and EVANS**, District Judge.
 VANCE, Circuit Judge:
 
 
 1
 Plaintiff insurers appeal from the district court's entry of judgment for defendant marina after a non-jury trial of plaintiffs' consolidated subrogation action to recover monies paid to their respective insureds for property damage. 677 F.Supp. 1156. Because we conclude that there was no subject matter jurisdiction, we vacate the judgment and order the case dismissed.
 
 I.
 
 2
 On April 30, 1986 two hundred vessels were destroyed by a fire at Hi-Lift Marina in North Miami Beach, Florida. Myron Withka and Lance Raiffe each owned one of the boats destroyed; appellant Latin American insured Withka's vessel and appellant Continental insured Raiffe's. Both Withka and Raiffe had signed storage agreements with defendant Hi-Lift that provide in part:
 
 
 3
 This agreement is for the use of boat storage space at Hi-Lift Marina, Inc. only, including the necessary handling of the boat and placing it in and removing it from storage. The use of such space and related handling of the boat shall be at the sole risk of owner. The company shall not be liable for any loss or damage by theft, or otherwise, to any vessel or property. Owner warrants that owner's boat is covered by complete hull, property damage and liability insurance and will remain so covered during the period of storage assigned. Company shall be entitled to assume that such insurance is provided and shall not be required to examine policies to this effect, although such policy shall be produced by owner for examination upon request. Owner indemnifies and holds company harmless against any loss, cost, suit or claim arising out of use of storage space or any handling of the vessel in connection therewith whether or not such loss, costs, suit or claim is based upon negligence of company.
 
 
 4
 (emphasis in original).
 
 
 5
 The cause of the fire is unknown. The Bureau of Alcohol, Tobacco and Firearms ruled out arson and structural electrical problems as possible causes. The building in which the vessels were stored was constructed of reinforced concrete block with a corrugated metal roof and was divided into two sections ("east barn" and "west barn") by a fire wall. Withka's vessel was stored in the east barn; Raiffe's boat was located in the west barn.
 
 
 6
 Hi-Lift employed two guards to patrol the marina after hours. William Fox, who was on duty at Hi-Lift until midnight on the night of the fire, testified at trial that he did not see, hear, or smell anything unusual as he patrolled the premises. Clarence Bergman, who patrolled Hi-Lift and three surrounding properties after midnight, arrived at Hi-Lift at approximately 12:10 a.m. He saw nothing unusual. At about one o'clock, however, he heard a muffled noise followed by a series of explosions. He then saw smoke and flames above the north entrance door of the storage area. Bergman immediately called to report the fire. The fire department arrived at 1:09 a.m. and brought the blaze under control at about 4:00 a.m. The contents of the facility were completely destroyed.
 
 
 7
 The storage facility was furnished with six smoke detectors, but had no smoke or fire alarms, sprinklers, or carbon dioxide systems. There were fire doors between the east and west barns, which were kept open but were equipped with a heat-activated automatic closing device. Evidence at trial suggested that collapsing roof beams blocked the fire doors, preventing them from closing. Hi-Lift presented expert testimony that neither a sprinkler system nor closed fire doors would have controlled the fire. This opinion was based on the theory that exploding fuel tanks caused the fire to spread rapidly and to burn with extreme intensity.
 
 
 8
 Plaintiffs Latin American and Continental filed virtually identical subrogation actions in admiralty alleging breach of contract, breach of implied warranty, and negligence. After the actions were consolidated, defendant Hi-Lift filed a motion for summary judgment on the ground that recovery was barred by the storage agreement's exculpatory clause. The court denied the motion, concluding that the exculpatory clause was void under maritime law. The case proceeded to a non-jury trial, during which plaintiffs abandoned their claims for breach of contract and breach of implied warranty. The court entered judgment for Hi-Lift, holding that plaintiffs had failed to show that Hi-Lift's negligence proximately caused the loss.
 
 II.
 
 9
 In their complaint, the plaintiffs alleged federal jurisdiction solely on the basis of admiralty. See 28 U.S.C. Sec. 1333; Fed.R.Civ.P. 9(h). The defendants moved to dismiss the complaint for lack of jurisdiction, but this motion was denied. The litigants have not explored the issue further in this court.
 
 
 10
 Subject-matter jurisdiction can never be waived or conferred by the consent of the parties. Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). Therefore, we are duty-bound to determine for ourselves the basis for jurisdiction in the district court, and to dismiss for lack of jurisdiction any case in which it is found to be wanting. Eagerton v. Valuations, Inc., 698 F.2d 1115, 1118 (11th Cir.1983). " 'The rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception, which requires this court, of its own motion, to deny its jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record.' " Insurance Corp. of Ireland, 456 U.S. at 702, 102 S.Ct. at 2104 (quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884)).
 
 
 11
 A panel of this court recently decided a question of admiralty jurisdiction in a case substantially similar to the one now before us. Lewis Charters, Inc. v. Huckins Yacht Corporation, 871 F.2d 1046 (11th Cir.1989). In Lewis, a fire broke out at the paint facility of a marina, destroying the facility, a boat in the paint room, and another boat in the wet berth. The marina owner brought suit against the owner of one of the boats, alleging that the negligence of the boat owner's agent had caused the fire. Among other actions, the boat owner filed a complaint for exoneration from or limitation of liability, pursuant to the Limitation of Vessel Owner's Liability Act. This complaint was founded on admiralty jurisdiction. The marina owner moved to dismiss the complaint for lack of subject matter jurisdiction.
 
 
 12
 The Lewis court applied the test of Foremost Insurance Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), that a claim must have a "sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction in the District Court," id. at 674, 102 S.Ct. at 2658. The Lewis court noted that the boats were at rest, unoccupied, and that the damage caused by the fire, "although affecting objects and facilities related to the water, did not occur where other vessels in navigation could have been affected." Lewis, 871 F.2d at 1051. Finally, the court determined that invocation of admiralty jurisdiction would not further the purpose of developing a uniform law governing the maritime industries. The court compared the situation at hand to that of a car owner whose case is destroyed in a fire at the mechanic's garage. Finding the two situations indistinguishable, the court could see no reason by either case would foreseeably turn on the application of admiralty law, id. at 1051-52, and denied jurisdiction, id. at 1052.
 
 
 13
 Because the facts of Lewis are virtually indistinguishable from those here, we are bound by its holding. This dispute is not within the federal courts' admiralty jurisdiction.
 
 III.
 
 14
 The district court's judgment is VACATED and the case is REMANDED with instructions that it be dismissed for lack of subject matter jurisdiction.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Orinda D. Evans, U.S. District Judge for the Northern District of Georgia, sitting by designation