16 F.3d 34
 1994 A.M.C. 1683
 SIRIUS INSURANCE COMPANY (UK) LIMITED, Minster Ins. Co.
Ltd., the Prudential Assurance Company Limited, Commercial
Union Assurance Company PLC, the Yorkshire Insurance Company
Ltd., Ocean Marine Insurance Co., Northern Assurance Company
Limited, English & American Insurance Company Ltd., Fuji
International Insurance Company Limited, Nippon Insurance
Company of Europe Limited, Switzerland Insurance Company
(UK) Limited, Norwich Union Fire Insurance Society Ltd.,
London & Hull Maritime Insurance Company Limited, Andrew
Weir Insurance Company Limited, Guardian Royal Exchange
Assurance PLC, Colonia Insurance Company (UK) Limited,
Allianz International Insurance Company, Cornhill Insurance
Company Limited and Maritime Insurance Company Limited,
Plaintiffs-Appellees,
v.
Paul M. COLLINS, Defendant-Appellant.
 No. 818, Docket 93-7761.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 3, 1994.
Decided Feb. 4, 1994.
 
 Perry S. Reich, Lindenhurst, N.Y. (Schapiro & Reich, Lindenhurst, N.Y., David Roth, Kressel, Rothlein & Roth, Massapequa, N.Y., of counsel), for Defendant-Appellant.
 James W. Carbin, New York, N.Y. (Julia A. Meyer, Kroll & Tract, New York, New York, of counsel), for Plaintiffs-Appellees.
 Before: MESKILL, KEARSE, and LEVAL, Circuit Judges.
 LEVAL, Circuit Judge:
 
 
 1
 The insured owner of a stolen pleasure boat appeals from a declaratory judgment entered after bench trial in the United States District Court for the Eastern District of New York (Leonard D. Wexler, Judge) holding that the plaintiff-insurers are not liable on the theft protection clause of a policy of vessel insurance, by reason of the insured's breach of conditions of coverage. Appellant contends first, that the action was not within the admiralty jurisdiction of the United States courts under 28 U.S.C. Sec. 1333, and, second, that ambiguity in the policy required that it be construed in the insured's favor.
 
 BACKGROUND
 
 2
 Plaintiff-insurers issued a Certificate of Insurance for one year beginning May 18, 1991, under its High Performance Marine Program to defendant Collins covering his vessel, a 1988 37' Midnight Express 37 Sport (and trailer). The policy included a "theft warranty" relating to periods of out-of-water storage that conditioned coverage upon certain precautions to be taken by the insured, as well as on the theft occurring in specified fashion. This provision reads as follows:
 
 
 3
 THEFT WARRANTY: It is hereby understood and agreed and warranted that;
 
 
 4
 While the insured boat is stored on a trailer it shall be:
 
 
 5
 1. Kept in locked fences [sic] enclosure, garage, or building.
 
 
 6
 2. Secured with a trailer ball lock while attached to a vehicle.
 
 
 7
 It is understood and agreed that this certificate does not cover loss or damage caused by theft of the insured boat(s), and/or equipment, while stored on the trailer unless occasioned by person or persons making:
 
 
 8
 1. Entry to the locked fenced enclosure, garage or building; or
 
 
 9
 2. Destruction of the ball lock.
 
 
 10
 Provided the above is accompanied by actual force and violence of which there shall be visible marks made by tools, explosives, electricity, or chemicals.
 
 
 11
 On or around January 5, 1992, Collins, according to his testimony, loaded the boat onto the insured trailer, removed it from the water for winter storage, and towed it to his parents' home in West Islip, New York. He parked his truck and the trailered boat, attached with a ball lock, on the circular driveway at the front of his parents' home, planning, according to the district court's findings of fact, to leave it there "for an indefinite period of time." He fastened a chain between two posts located at one outlet of the driveway before leaving; the other outlet remained open. The following day the truck, trailer and boat were missing from the driveway. According to Collins, the chain across the driveway had been broken.
 
 
 12
 The district court held that the theft warranty required the defendant to place the boat, while stored on a trailer, in a locked, fenced enclosure, and that the defendant had failed to do so in breach of the warranty. Judgment was accordingly awarded to the insurers.
 
 DISCUSSION
 
 13
 Collins contends that because the theft occurred ashore, litigation under the policy is not within the specialized exclusive maritime jurisdiction conferred on federal courts by 28 U.S.C. Sec. 1333. He relies primarily on Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd., 968 F.2d 196 (2d Cir.1992), and Lewis Charters, Inc. v. Huckins Yacht Corp., 871 F.2d 1046 (11th Cir.1989), which we discuss below. We disagree with Collins's contentions and hold that this is a maritime claim properly lodged in our admiralty jurisdiction.
 
 
 14
 The Supreme Court explained in 1871 that, in determining whether admiralty jurisdiction applies to a contract dispute, "the fundamental inquiry [has been] whether the contract was or was not a maritime contract.... and whether maritime or not maritime depended ... on the subject-matter of the contract. If that was maritime the contract was maritime." Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 29, 20 L.Ed. 90 (1871). It has been long settled that the maritime jurisdiction applies to "all contracts ... which relate to the navigation, business, or commerce of the sea," Atlantic Mutual, 968 F.2d at 199, quoting from De Lovio v. Boit, 7 F.Cas. 418, 444 (C.C.D.Mass.1815) (No. 3,776) (Story, J.). Although it was once disputed whether marine insurance contracts were maritime, in view of the fact that they were made and performed ashore, see Dunham, 78 U.S. (11 Wall.) at 30, it has long been settled that because their subject is maritime, they fall within the admiralty jurisdiction. See id. at 30-35, citing De Lovio v. Boit, supra; Atlantic Mutual, 968 F.2d at 199.
 
 
 15
 Under the old, now outdated rule, the jurisdiction was said to be reserved to "contracts, claims, and services purely maritime," Rea v. The Eclipse, 135 U.S. 599, 608, 10 S.Ct. 873, 876, 34 L.Ed. 269 (1890) (emphasis added). The test has, however, been loosened considerably so that admiralty jurisdiction is held to cover also contracts whose nonmaritime elements are "incidental" to a primarily maritime purpose, as well as the separable maritime portions of mixed contracts that are not primarily maritime, if these can be separately litigated without prejudice. Atlantic Mutual, 968 F.2d at 199; Simon v. Intercontinental Transport (ICT) B.V., 882 F.2d 1435, 1442 (9th Cir.1989).
 
 
 16
 In Atlantic Mutual, we ruled that, in appraising those questions, the court should consider "whether an issue related to maritime interests has been raised," 968 F.2d at 199, bearing in mind that the " 'fundamental interest giving rise to maritime jurisdiction is "the protection of maritime commerce." ' " Id. at 200, quoting Sisson v. Ruby, 497 U.S. 358, 367, 110 S.Ct. 2892, 2898, 111 L.Ed.2d 292 (1990), quoting Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982).
 
 
 17
 Applying these principles to the claim before us, we are satisfied that the policy of marine insurance, which covered a vessel against a wide variety of perils during its normal use "afloat," as well as during transportation and storage ashore, serves "the protection of maritime commerce," and that a claim based on the theft of the vessel is "related to maritime interests," notwithstanding that the policy included coverage during land storage and that the theft occurred in those circumstances.
 
 
 18
 There are few objects--perhaps none--more essentially related to maritime commerce than vessels. They have no utility on land; they are taken ashore solely to make or keep them fit for use in the water, or to transport them from one body of water to another.[1] Furthermore, taking smaller boats ashore for these purposes is important or essential to their use on the water. The risk of theft of boats is an important concern of maritime commerce. And whether theft of a vessel occurs while it is afloat or ashore, the impact of the theft is on maritime commerce. Policies providing insurance covering such theft relate importantly to the protection of maritime commerce.
 
 
 19
 Given all these considerations, we might find it difficult to decide whether this policy should be considered as "purely" maritime or as having nonmaritime elements that are merely "incidental" to a primarily maritime purpose. But the question is academic. For, in either case, the claim is to be litigated within the maritime jurisdiction. Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd., 968 F.2d 196, 199 (2d Cir.1992); Simon v. Intercontinental Transport (ICT) B.V., 882 F.2d 1435, 1442 (9th Cir.1989).
 
 
 20
 Collins relies on our denial of admiralty jurisdiction in Atlantic Mutual, where the policy covered the cargo during land transport and warehousing, as well as during ocean carriage, and the losses occurred during warehousing on land. That case presented significantly different facts. The policy there covered not a boat, but coffee, which does not have an inherently maritime character. Secondly, although part of the policy was designed to cover maritime transportation, other portions, with separately calculated premiums, covered the coffee during inland transportation, storage, and milling. The contract was neither purely maritime nor even primarily maritime. Furthermore, the thefts occurred while the coffee was in indefinite land storage without ever having entered maritime commerce. It was indeed questionable whether it would ever enter maritime commerce as the eventual transportation from Mexico to the United States might have occurred by truck, rather than ship. Thus, although Atlantic Mutual has points in common with the present case--to wit that both policies provided shore coverage and both losses occurred during such shore coverage--we consider the two situations fundamentally different. In Atlantic Mutual, "the subject matter of the dispute [was] ... so attenuated from the business of maritime commerce that it [did] not implicate the concerns underlying admiralty ... jurisdiction." 968 F.2d at 200. Here the contrary is true.
 
 
 21
 Nor is Collins helped by Lewis Charters, Inc. v. Huckins Yacht Corp., 871 F.2d 1046 (11th Cir.1989), which held that a negligence action for the destruction of a boat by fire in a shoreside painting shed was not properly litigated in admiralty. See also Latin American Property & Casualty Ins. Co. v. Hi-Lift Marina, Inc., 887 F.2d 1477 (11th Cir.1989). For Lewis was a tort case--not a contract case. Admiralty tort jurisdiction is determined quite differently from admiralty contract jurisdiction. See Foremost Ins. Co. v. Richardson, 457 U.S. 668, 672-74, 102 S.Ct. 2654, 2657-58, 73 L.Ed.2d 300 (1982) (describing admiralty tort jurisdiction). Lewis Charters is therefore not helpful to Collins's argument.
 
 
 22
 There is no validity to appellant's contention that the admiralty jurisdiction is inapplicable to a pleasure boat, as opposed to a commercial vessel. Albeit in the more compelling context of the need for uniform application of the Rules of the Road to commercial vessels and pleasure craft alike, the Supreme Court made clear in Foremost that admiralty jurisdiction extends to matters involving pleasure boats. Foremost, 457 U.S. at 675-76, 102 S.Ct. at 2658-59. Although they are not employed in commercial endeavors, pleasure boats constitute an important part of maritime commerce.
 
 
 23
 Nor is Collins aided by the holding of Frank B. Hall & Co. v. S.S. Seafreeze Atlantic, 423 F.Supp. 1205 (S.D.N.Y.1976). The district court there held that the admiralty jurisdiction was inapplicable to a claim on a ship that had been mothballed, laying idle for several years, without any likely prospect of its returning to navigation. Collins never contended below that his boat was mothballed. He testified that he removed the boat from the water "for winter storage." Although Judge Wexler found that Collins "intended to leave the vessel in the driveway of his parents' residence ... for an indefinite period of time " (emphasis added), it is clear the judge meant this in the context of winter storage, not permanent mothballing.
 
 Ambiguity of the theft clause
 
 24
 Collins's second contention is that the theft warranty is ambiguous, and must therefore be construed against the insurers. It is ambiguous, he argues, because the lack of a conjunctive "and" or "or" left unclear whether he was required to comply with one or both of the listed precautions against theft of a trailered boat, to wit: storage in a locked fenced enclosure and securing with a trailer ball lock while attached to a vehicle. He further argues that because the following clause requires that the theft have been performed either by entry to the locked enclosure or destruction of the trailer ball lock, the warranty requirement must be fulfilled when the boat is either attached to a vehicle with a trailer ball lock (which he claims he did), or placed in a locked enclosure.
 
 
 25
 Upon examination of the structure and content of the theft warranty, we disagree. The structure naturally and unambiguously conveys that both precautionary conditions must be met. As to the content, although the contract is poorly drafted and contains odd provisions of questionable value on either reading, we do not find that inferring a disjunctive makes better sense than the apparently implied "and." We therefore do not find ambiguity that would require construing the contract against the insurer. See, e.g., McCormick & Co. v. Empire Ins. Group, 878 F.2d 27, 30 (2d Cir.1989).
 
 
 26
 We note furthermore, however, that even if we ruled in Collins's favor that he needed to meet only one of the two conditions, he would still not recover. For the next clause requires that the theft have been caused either by "entry to the locked fenced enclosure ... or destruction of the ball lock." Collins could show neither.
 
 CONCLUSION
 
 27
 The judgment of the district court is affirmed.
 
 
 
 [1]
 As in Werner Herzog's film, Fitzcarraldo (1982)