ART MASTERS ASSOCIATES, LTD., et al., Appellants, v UNITED PARCEL SERVICE, Respondent.

Second Department, December 29, 1989

42

**APPEARANCES OF COUNSEL**

*Tell, Cheser & Breitbart (Alfred C. Polidore* of counsel), for appellants.

*Kenneth Adler & Associates (Schnader, Harrison, Segal & Lewis [Steven D. Shadoewn* and *Brian S. Cousin]* of counsel), for respondent.

**OPINION OF THE COURT**

MOLLEN, P. J.

The plaintiffs Art Masters Associates, Ltd., and Kram Trading (hereinafter collectively referred to as Art Masters), which are located at 2616 East 65th Street in Brooklyn, are in the business of buying and selling works of art. In May 1985, Art Masters obtained a number of original Erte paintings from a gallery in London, England. Sometime thereafter, six of the paintings were consigned to Benjamin's Art Gallery in Buffalo, New York (hereinafter Benjamin). In or about July 1985, Art Masters and Benjamin agreed that the latter would return the six Erte paintings to Art Masters because the paintings had not been sold.

On or about July 16, 1985, Benjamin delivered the six paintings to the defendant United Parcel Service (hereinafter UPS) for shipment to Art Masters in Brooklyn. Upon its delivery of the package containing the paintings to UPS, Benjamin filled out a pick-up record wherein it declared the value of the package to be $999.99. The pick-up record con-

tained the following statement: "[u]nless a greater value is declared in writing on this receipt, the shipper hereby declares and agrees that the released value of each package or article not enclosed in a package covered by this receipt is $100 which is a reasonable value under the circumstances surrounding the transportation". Under UPS's tariffs, which are filed with and approved by the Interstate Commerce Commission (hereinafter the ICC) and the State of New York under Transportation Law § 170 *et seq.*, a shipper may declare value in excess of $100 by indicating the desired amount on the pick-up record and paying a charge of 25 cents for each $100 increment over the initial $100. Based on this schedule, Benjamin paid $2.25 for the shipment of its package of Erte paintings to Art Master.

The record establishes that the package of paintings was never received by Art Masters. According to Sheila Schachner, an employee at Art Masters, the shipment from Benjamin was expected to arrive at Art Masters on July 19, 1985. On that day, Schachner left the premises for approximately 15 minutes and upon her return she observed a UPS delivery truck on the next block. When Schachner asked the truck driver whether any deliveries were made to Art Masters, the driver stated that he had left a package at the side door of the building. When Schachner returned to the premises and was unable to locate the package, she requested the truck driver's assistance in finding it. Despite their efforts, the package was never located. According to Schachner, she requested UPS to trace the package and, in response, was provided with a copy of a delivery sheet which displayed a signature for the package. Schachner stated that the signature, which is illegible, was neither hers nor that of any other Art Masters employee.

Upon being advised of the lost shipment, UPS offered to pay Art Masters the sum of $999.99 which represented the declared value of the package. That offer was apparently declined.

Art Masters thereafter commenced the instant action against UPS seeking to recover the sum of $27,000 which represented the full value of the six Erte paintings. Art Masters' complaint alleged causes of action sounding in common-law liability of common carriers and conversion. In its verified answer, UPS set forth several affirmative defenses and averred that its liability, if any, was limited to the declared value of the package.

UPS thereafter moved for summary judgment dismissing the complaint on the ground that its liability to Art Masters was limited, as a matter of law, to the sum of $999.99. In its accompanying memorandum of law, UPS asserted that according to its tariffs, the liability of UPS for lost shipments is limited to the declared value thereof. UPS argued further that Art Masters' allegations of conversion did not void the UPS limitation of liability. On this point, UPS asserted that since it was an interstate common carrier licensed by the ICC, its liability for lost shipments was governed by the Federal statutes, namely, the Carmack Amendment to the Interstate Commerce Act (49 USC § 10730) as well as Federal case law. Moreover, UPS maintained that under the Federal statutes, its liability for lost shipments was limited to the declared value of the package and that under Federal case law, common carriers are not liable for damages in conversion unless the aggrieved party can establish an actual conversion of the shipment by the common carrier. In view of the absence of any allegation or proof that UPS actually converted the paintings, UPS asserted that its liability to Art Masters could not be expanded beyond the package's declared value.

Art Masters opposed UPS's motion for summary judgment and cross-moved for summary judgment in its favor in the sum of $27,000. Art Masters noted that UPS did not dispute the fact that it failed to deliver the shipment of paintings and, accordingly, Art Masters argued that UPS was not entitled to summary judgment on the issue of liability. Moreover, Art Masters contended that since the shipment in question was wholly intrastate, UPS's liability for the lost shipment was governed by State law and that while UCC 7-309 (2) provides that a carrier's liability for intrastate shipments is limited to the shipment's declared value, that subdivision also provides that "no such limitation is effective with respect to the carrier's liability for conversion to its own use". Additionally, Art Masters, citing *I.C.C. Metals v Municipal Warehouse Co.* (50 NY2d 657), argued that under State law, proof of delivery to a common carrier and proof of the carrier's failure to deliver the shipment at the destination is sufficient to establish a prima facie case of conversion against a common carrier. In view of the undisputed allegations that the paintings were delivered to UPS and that they were never received by Art Masters, coupled with the absence of an explanation by UPS for the loss of the package, Art Masters submitted that it was entitled to the relief requested in its complaint.

The Supreme Court granted that branch of Art Masters' cross motion which was for summary judgment on its first cause of action sounding in common-law liability of common carriers but limited the award of damages to $999.99 *(Art Masters Assocs. v United Parcel Serv.,* 139 Misc 2d 888). UPS was denied summary judgment dismissing that cause of action based on its failure to rebut Art Masters' assertion that the package was never received. The Supreme Court, however, granted that branch of UPS's motion which was for summary judgment dismissing the second cause of action to recover damages for conversion and, concomitantly, denied that branch of Art Masters' cross motion which was for summary judgment on that cause of action. The court reasoned that since UPS is a common carrier operating under the ICC's jurisdiction, Federal law, rather than State law, governed. Under Federal law, the court noted, conversion is not presumed in those instances where the common carrier failed to deliver a package as requested; rather, the party asserting the claim has the burden of establishing that the carrier was responsible for the loss due to its willful or intentional conduct. In view of Art Masters' failure to allege willful or intentional conduct by UPS in the loss of the package in question, the court concluded that Art Masters' cause of action sounding in conversion had to be dismissed *(Art Masters Assocs. v United Parcel Serv., supra,* at 890-891).

■■ We agree with the Supreme Court's conclusion that Art Masters is entitled to summary judgment on its first cause of action sounding in the common-law liability of common carriers and that its damages on that cause of action are limited to $999.99. However, we disagree with the Supreme Court's application of Federal law, rather than State law, in determining whether a prima facie case of conversion has been established against UPS.

■ The Federal law governing the rights and liabilities of common carriers with respect to lost or damaged shipments is embodied in the Carmack Amendment to the Interstate Commerce Act (49 USC § 10730) and applies solely to common carriers providing transportation or services subject to the ICC's jurisdiction (49 USC § 10730 [a]). The ICC's jurisdiction over transportation extends only to "passengers, property, or both, [which] are transported by motor carrier—

"(1) between a place in—

"(A) a State and a place in another State;

"(B) a State and another place in the same State through another State;

"(C) the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States;

"(D) the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or

"(E) the United States and a place in a foreign country to the extent the transportation is in the United States" (49 USC § 10521 [a] [1]).

In the case at bar, the package containing the six Erte paintings was shipped wholly intrastate, i.e., from Buffalo to Brooklyn. In view thereof, the Supreme Court's reliance on the Federal statutory and case law governing the liability of interstate carriers for lost shipments was misplaced (see, Lerakoli, Inc. v Pan Am. World Airways, 783 F2d 33, 37; Starmakers Publ. Corp. v Acme Fast Frgt., 615 F Supp 787, 791; 17 NY Jur 2d, Carriers, § 133; cf., Nippon Fire & Mar. Ins. Co. v Holmes Transp., 616 F Supp 610).

■ At common law, a common carrier is an insurer against the loss of, or damage to, property received by it for transportation, except for losses caused by an act of God, the public enemy, the act of the shipper (for example, improper packaging), or the inherent nature of the goods (see, Tatlow & Pledger [PTY] v Hermann Forwarding Co., 456 F Supp 351; 17 NY Jur 2d, Carriers, §§ 276-286). Although carriers may not enter into agreements exempting themselves from all liability for negligence (see, Straus & Co. v Canadian Pac. Ry. Co., 254 NY 407), carriers may enter into agreements with shippers stipulating the amount recoverable in the event of loss or damage to the shipped goods (see, National Blouse Corp. v Felson, 274 App Div 164, 166, affd 299 NY 612). Notably, the limitation on a carrier's liability for negligence is not intended to protect the carrier for its affirmative wrongdoing (see, D'Utassy v Barrett, 219 NY 420).

This common-law scheme of common carrier liability is reflected in the relevant New York statutory authority governing the liability of common carriers for lost or damaged shipments. Thus, UCC 7-309 provides, inter alia:

"(1) A carrier who issues a bill of lading whether negotiable or non-negotiable must exercise the degree of care in relation to the goods which a reasonably careful man would exercise

under like circumstances. This subsection does not repeal or change any law or rule of law which imposes liability upon a common carrier for damages not caused by its negligence.

"(2) Damages may be limited by a provision that the carrier's liability shall not exceed a value stated in the document if the carrier's rates are dependent upon value and the consignor by the carrier's tariff is afforded an opportunity to declare a higher value or a value as lawfully provided in the tariff, or where no tariff is filed he is otherwise advised of such opportunity; but no such limitation is effective with respect to the carrier's liability for conversion to its own use".

Transportation Law § 181 similarly provides: "Every common carrier of property by motor vehicle shall, upon demand, issue either a receipt or a bill of lading for all property delivered to it for transportation. No contract, stipulation or clause in any receipt or bill of lading shall exempt any common carrier of property by motor vehicle from any liability for loss, damage or injury caused by it to property from the time of its delivery for transportation until the same shall have been received at its destination and a reasonable time shall have elapsed after notice to the consignee of such arrival to permit the removal of such property and inspection; provided, however, that when expressly authorized or required by order of the commissioner a carrier may establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released and shall not, so far as relates to values, be held to violate this article. Every common carrier of property by motor vehicle shall be liable for all loss, damage or injury to property caused by delay in transit due to negligence while the same is being carried by it, but in any action to recover for damages sustained by delay in transit the burden of proof shall be upon the defendant to show that such delay was not due to negligence. *Nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which such holder has under existing law*" (emphasis added).

Applying the aforesaid principles to the case at bar, we conclude, as noted previously, that the Supreme Court acted properly in awarding summary judgment to Art Masters on its first cause of action sounding in common-law liability of

common carriers and limiting its damages to the declared value of the package, i.e., $999.99. The Supreme Court, however, erred in awarding summary judgment in favor of UPS dismissing Art Masters' second cause of action sounding in conversion. In *I.C.C. Metals v Municipal Warehouse Co.* (50 NY2d 657, *supra)*, which involved a claim of conversion against a warehouse, the Court of Appeals held that proof of delivery of the stored property to the warehouse and proof of the warehouse's failure to return that property upon proper demand was sufficient to establish a prima facie case of conversion against the warehouse. In order to avoid liability for conversion, the warehouse was required to come forward with an adequate explanation for its failure to return the stored property. The Court of Appeals explained the rationale of its holding as follows:

"We note * * * that the requirement that a warehouse provide an explanation for loss of property entrusted to it is certainly not overly harsh, nor does it impose a heavy burden upon the warehouse. The warehouse must only offer proof of what actually happened to the goods and need not show that it was free from fault, for once the warehouse makes the initial required showing, the burden of proving the warehouse to be at fault will fall squarely upon the plaintiff. No greater duty of care is created by this rule, nor does it establish any sort of strict liability. Certainly a warehouse may reasonably be required to keep track of goods entrusted to it and to supply an accurate explanation of any loss to the bailor.

"Finally, where a warehouse does not explain the cause of the loss, it would appear as reasonable to assume that this profession of ignorance is due to the fact that the warehouse has converted the goods as to presume that it is due to the fact that the warehouse has been negligent. Indeed, one who commits an intentional wrong is more likely to attempt to cover his tracks than one who has been at most negligent, especially in light of the disparity in potential liability created by the insertion of a limitation of liability clause" *(I.C.C. Metals v Municipal Warehouse Co., supra,* at 667-668).

This ruling has also been applied to cases, such as that at bar, involving claims of conversion against common carriers *(see, Iselin & Co. v Milton Feinberg, Inc.,* 92 AD2d 495; *RGA Indus. v Jomas Express,* 129 Misc 2d 1066; *but see, Lerakoli, Inc. v Pan Am. World Airways,* 783 F2d 33, 38, *supra)*.

Turning to the facts of the case at bar, we find that Art

Masters established a prima facie case of conversion against UPS based on its undisputed allegations that Benjamin delivered the Erte paintings to UPS and that Art Masters never received them. Moreover, we conclude that an issue of fact exists as to whether UPS has come forward with an adequate explanation for its failure to deliver the Erte paintings to Art Masters. In view thereof, we modify the Supreme Court's order and judgment by reinstating Art Masters' second cause of action sounding in conversion. In the event that it is determined that UPS has failed to provide an adequate explanation for the loss of the Erte paintings, Art Masters would be entitled to recover the market value of the lost paintings less the sum of $999.99 which represents the damages awarded to Art Masters on its first cause of action.

Accordingly, the order and judgment is modified (1) by deleting therefrom the provision granting that branch of the defendant's motion which was for summary judgment dismissing the plaintiffs' second cause of action for conversion and substituting therefor a provision denying that branch of the motion, and (2) by adding thereto a provision severing the plaintiffs' second cause of action; as so modified, the judgment is affirmed, with costs to the plaintiffs, and the matter is remitted to the Supreme Court, Kings County, for further proceedings on the plaintiffs' second cause of action.

BRACKEN, RUBIN and SULLIVAN, JJ., concur.

Ordered that the order and judgment is modified (1) by deleting therefrom the provision granting that branch of the defendant's motion which was for summary judgment dismissing the plaintiffs' second cause of action for conversion and substituting therefor a provision denying that branch of the motion, and (2) by adding thereto a provision severing the plaintiffs' second cause of action; as so modified, the judgment is affirmed, with costs to the plaintiffs, and the matter is remitted to the Supreme Court, Kings County, for further proceedings on the plaintiffs' second cause of action.